# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **MARK WAYNE LEE,** | |
| Plaintiff, | |
| v. | No. 16 C 9344 |
| **NANCY A. BERRYHILL, Acting Commissioner of Social Security,**[1] | Magistrate Judge Mary M. Rowland |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Mark Wayne Lee filed this action seeking reversal of the final decision of the Commissioner of Social Security denying his applications for Supplemental Security Income (SSI) under Title XVI of the Social Security Act (Act). 42 U.S.C. §§ 405(g), 1381 et seq. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and Plaintiff has filed a request to reverse the ALJ's decision and remand for additional proceedings. For the reasons stated below, the Commissioner's decision is affirmed.

## I. THE SEQUENTIAL EVALUATION PROCESS

To recover SSI, a claimant must establish that he or she is disabled within the meaning of the Act. *York v. Massanari*, 155 F. Supp. 2d 973, 977 (N.D. Ill. 2001).[2] A

---

[1] On January 23, 2017, Nancy A. Berryhill became Acting Commissioner of Social Security and is substituted for her predecessor as the proper defendant in this action. Fed. R. Civ. P. 25(d).

[2] The regulations governing the determination of disability for SSI are found at 20 C.F.R. § 416.901 et seq. The standard for determining SSI DIB is virtually identical to that

person is disabled if he or she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). In determining whether a claimant suffers from a disability, the Commissioner conducts a standard five-step inquiry:

1. Is the claimant presently unemployed?
2. Does the claimant have a severe medically determinable physical or mental impairment that interferes with basic work-related activities and is expected to last at least 12 months?
3. Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations?
4. Is the claimant unable to perform his or her former occupation?
5. Is the claimant unable to perform any other work?

20 C.F.R. §§ 416.909, 416.920; *see Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985). "The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner." *Clifford*, 227 F.3d at 868.

---

used for Disability Insurance Benefits (DIB). *Craft v. Astrue*, 539 F.3d 668, 674 n.6 (7th Cir. 2008) ("Although the Code of Federal Regulations contains separate sections for DIB and SSI, the processes of evaluation are identical in all respects relevant to this case."). Accordingly, this Court cites to both DIB and SSI cases.

## II. PROCEDURAL HISTORY

Plaintiff applied for SSI on May 30, 2013, alleging that he became disabled on January 1, 2002, due to depression, illiteracy, hernia, arthritis, hole in eardrum, and hearing loss. (R. at 11, 169). The application was denied initially and upon reconsideration, after which Plaintiff filed a timely request for a hearing. (*Id.* at 11, 60–81, 98–100). On April 21, 2015, Plaintiff, represented by counsel, testified at a hearing before an Administrative Law Judge (ALJ). (*Id.* at 11, 30–59). The ALJ also heard testimony from Gary Paul Wilhelm, a vocational expert (VE). (*Id.* at 11, 23–59; *see id.* at 133–35).

The ALJ denied Plaintiff's request for benefits on May 14, 2015. (R. at 11–25). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff has not engaged in substantial gainful activity since May 30, 2013, the application date. (*Id.* at 13). At step two, the ALJ found that Plaintiff's borderline intellectual functioning and depression are severe impairments. (*Id.* at 13–16). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any of the listings enumerated in the regulations. (*Id.* at 16–20).

The ALJ then assessed Plaintiff's Residual Functional Capacity (RFC)[3] and determined that he can perform a full range of work at all exertional levels but with nonexertional limitations:

---

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum

> [Plaintiff] lacks the ability to understand, remember, and carry out detailed instructions because of moderate limitations in concentration, persistence, or pace, but retains the sustained concentration necessary for simple work of a routine and repetitive type. [Plaintiff] would have some difficulty maintaining regular attendance within a schedule and being punctual within customary tolerances, but would be absent or late from work no more than once per month. [Plaintiff] would not be able to perform work requiring a production or assembly line pace, but he would be able to perform work permitting a more flexible pace.

(R. at 20–21; *see id.* at 21–23). The ALJ determined at step four that Plaintiff has no past relevant work. (*Id.* at 26). At step five, based on Plaintiff's RFC and the VE's testimony, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including residential cleaner, cafeteria assistant, and store laborer. (*Id.* at 24–25). Accordingly, the ALJ concluded that Plaintiff was not suffering from a disability as defined by the Act. (*Id.* at 25).

The Appeals Council denied Plaintiff's request for review on August 12, 2016. (R. at 1–4). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue,* 556 F.3d 558, 561–62 (7th Cir. 2009).

### III. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the Act. In reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it

---

that a claimant can still do despite his mental and physical limitations." *Craft*, 539 F.3d at 675–76.

"reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). Where the Commissioner's decision "lacks

evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

## IV. DISCUSSION

In support for his request for reversal, Plaintiff argues that the ALJ erred in (1) her step-three determination and (2) assessing Plaintiff's RFC. (Dkt. 21 at 6–14).

### A. The ALJ Conducted a Proper Step-Three Analysis

The ALJ determined at step three that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any of the listings enumerated in the regulations. (R. at 16–20); *see* 20 C.F.R. pt. 404, subpt. P., app. 1. Plaintiff alleges that the ALJ did not document medical signs or laboratory findings which substantiated the presence of a mental disorder in accordance with the "A" criteria of Listings 12.02 or 12.04 and instead focused only on the "B" criteria of the listings. (Dkt. 21 at 7–8). Each of the § 12.00 listings require a satisfaction of the requirements in both "A criteria" and "B criteria." 20 C.F.R., pt. 404, subpt. P, app. 1, § 12.00 et. seq.

In this instance, the ALJ's step-three analysis concluded that Plaintiff failed to satisfy the "B criteria" because his mental impairments did not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation. (R. at 18–20). Instead, the ALJ found that Plaintiff has mild restrictions in activities of daily living, moderate difficulties in social functioning and in maintaining concentration, persistence or pace, and no episodes of decompensation. (*Id.*). Thus, Plaintiff would not have qualified for Listing 12.02 or

12.04 regardless of his satisfaction of the "A criteria." Therefore, the ALJ's failure to discuss the "A criteria" was not in error. *See Smith v. Colvin*, 931 F. Supp. 2d 890, 900 (N.D. Ill. 2013) (Since claimant "failed to satisfy criterion B," she "could not have qualified for Listing 12.04 regardless of whether or not she satisfied criterion A, so the ALJ's failure to discuss that criterion was not an error."); *Flynn v. Astrue*, 563 F. Supp. 2d 932, 941 (N.D. Ill. 2008) ("Since the ALJ found [claimant's] impairment failed to meet section B, his failure to discuss section A was meaningless.").

Further, Plaintiff has not identified any medical evidence that the ALJ failed to consider or that undermines the ALJ's "B criteria" conclusion. *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008) ("The claimant bears the burden of producing medical evidence that supports her claims of disability."). Contrary to Plaintiff's assertion (Dkt. 21 at 9), the ALJ was permitted to rely on her own observations of Plaintiff's demeanor during the administrative hearing to assess his ability to concentrate. *Kelley v. Sullivan*, 890 F.2d 961, 964 (7th Cir. 1989) (The ALJ "does not commit an impropriety when he relies on his own observations during a hearing concerning the severity of a claimant's claim."); *accord Decker v. Colvin*, No. 13 C 1732, 2014 WL 6612886, at *11 (N.D. Ill. Nov. 18, 2014). Moreover, both Terry A. Davis, M.D., and Lionel Hudspeth, Psy.D., reviewed the medical record and opined that Plaintiff's impairments do not medically equal Listing 12.02 or 12.04. (R. at 60,

65, 75, 81); *see* Social Security Ruling (SSR)[4] 96-6p, at *3 ("The signature of a State agency medical or psychological consultant on an SSA-831-U5 (Disability Determination and Transmittal Form) or SSA-832-U5 or SSA-833-U5 (Cessation or Continuance of Disability or Blindness) ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review."). And Plaintiff has not identified any medical opinion that contradicted Drs. Davis's and Hudspeth's opinions. *Filus v. Astrue*, 694 F.3d 863, 867 (7th Cir. 2012) (ALJ did not err in accepting DDS consultants' opinions that no listings were met or medically equaled where "no other physician contradicted these two opinions").

## B. The ALJ's RFC Assessment Properly Considered Plaintiff's Physical Limitations, Depression, and Illiteracy

Plaintiff contends that the ALJ failed to take his back pain, ankle pain, knee pain, headaches, and depression, and illiteracy into effect when determining his RFC. (Dkt. 17 at 10–13). "The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young*, 362 F.3d at 1000; see 20 C.F.R. § 404.1545(a)(1) ("Your residual functional capacity is the most you can still do despite your limitations."); SSR 96-8p, at *2 ("RFC is an administrative

---

[4] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000); *see* 20 C.F.R. § 402.35(b)(1). While the Court is "not invariably *bound* by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."). The RFC is based upon medical evidence as well as other evidence, such as testimony by the claimant or his friends and family. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008). In assessing a claimant's RFC, "the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe," and may not dismiss evidence contrary to the ALJ's determination. *Villano*, 556 F.3d at 563; see 20 C.F.R. § 404.1545(a)(1) ("We will assess your residual functional capacity based on all relevant evidence in your case record."); SSR 96-8p, at *7 ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.").

After carefully examining the record, the Court finds that the ALJ's determination of Plaintiff's RFC was thorough, thoughtful, and fully grounded in the medical evidence. Reviewing the ALJ's decision "as a whole in order to give it the most sensible reading," *Carter v. Colvin*, No. 12 CV 745, 2014 WL 4825272, at *4 n.1 (S.D. Ill. Sept. 29, 2014), the ALJ appropriately considered the combined impact of Plaintiff's severe and nonsevere impairments, *see Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004) ("we will nonetheless give the opinion a commonsensical reading rather than nitpicking at it") (citation omitted).

Plaintiff contends that the ALJ's RFC finding "does not take into consideration the physical problems documented throughout the medical record for which Plaintiff was continually seeking medical treatment for relief," including "such symptoms as back pain, ankle pain, knee pain, [and] headaches." (Dkt. 21 at 11). But *no* medical source opined that Plaintiff has *any* physical limitations. Instead, the only evidence of such limitations comes from Plaintiff's symptom statements, which the ALJ properly rejected as only partially credible. (R. at 14–16, 21–22, 23). And Plaintiff does not contend that the ALJ's subjective symptom evaluation was faulty. Beyond his own testimony, Plaintiff fails to identify medical evidence to support *any* physical limitations. SSR 96-4p, at *1 ("No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment.").[5]

Plaintiff also asserts that the ALJ "did not adequately incorporate the diagnosis of major depressive disorder, recurrent into her RFC." (Dkt. 21 at 13) (citation omitted). But Plaintiff fails to identify what *additional* nonexertional limitations are appropriate or how they are supported by the medical evidence. *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (claimant bears the burden to demonstrate

---

[5] Plaintiff complains that because the RFC includes no exertional limitations, it encompasses "very heavy work," which involves lifting up to 100 pounds. (Dkt. 21 at 11). However, of the jobs the VE testified that Plaintiff could perform, two are at the light level (lifting no more than 20 pounds), and the other is at the medium level (lifting no more than 50 pounds). (R. at 24).

how his mental impairments affects his ability to work). Plaintiff argues that the ALJ "failed to undertake a functional analysis in accordance with SSR 96-8p." (Dkt. 21 at 10). However, the Seventh Circuit has rejected such a formulaic approach; instead, "a narrative discussion of a claimant's symptoms and medical source opinions is sufficient." *Knox v. Astrue*, 327 F. App'x 652, 657 (7th Cir. 2009); *see Lewis v. Astrue*, 518 F. Supp. 2d 1031, 1043 (N.D. Ill. 2007) ("The plain language of SSR 96-8p requires the adjudicator to 'consider, not articulate,' Claimant's RFC in a function-by-function basis."). Here, the ALJ thoroughly reviewed the medical evidence, including Plaintiff's treatment records, the consultative examinations, Plaintiff's testimony, and the medical opinions to determine Plaintiff's RFC. (R. at 21–23).

Finally, Plaintiff contends that the ALJ failed to account for his illiteracy and being a slow learner. (Dkt. 21 at 13–14). But a claimant is illiterate only if he "cannot read or write a simple message." 20 C.F.R. § 416.964(b)(1). And here, the ALJ noted that Plaintiff has a 10th grade education and received B's and C's in school. (R. at 22, 24, 38); *see* C.F.R. § 416.964(b)(1) ("Generally, an illiterate person has had little or no formal schooling."); *Howard v. Massanari*, 255 F.3d 577, 584 (8th Cir. 2001) ("Although some 9th graders may be functionally illiterate, the more common inference is that persons with nine years of public education possess some ability to read."). Instead, the ALJ reasonably found that Plaintiff had a "limited education." (R. at 24, 54). A finding of "limited education" means an "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with

these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education." 20 C.F.R. § 416.964(b)(3). Accordingly, the ALJ restricted Plaintiff to "simple work of a routine and repetitive type." (R. at 20–21). The ALJ's finding was supported by substantial evidence. *See Glenn v. Sec'y of Health & Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987) (affirming the ALJ's literacy determination where claimant had fourth or sixth grade education, could "write only the simplest messages," and could "comprehend only the simplest written instructions"); *Hazelwood v. Astrue*, No. 11 CV 0103, 2012 WL 1301234, at *3 (N.D. Ind. Apr. 16, 2012) (where claimant completed 9th grade and was able to write simple messages, ALJ's conclusion that he was not illiterate was supported by substantial evidence).

## V. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment [21] is **DENIED**, and Defendant's Motion for Summary Judgment [23] is **GRANTED**. Pursuant to sentence four of 42 U.S.C. § 405, the ALJ's decision is affirmed.

Dated: September 18, 2017      E N T E R:

_____
MARY M. ROWLAND
United States Magistrate Judge